UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

United States of America,

        Plaintiff,

                      REPORT AND RECOMMENDATION

vs.

Luis Jimenez-Serrato,

        Defendant.                  Crim. 05-186 (MJD/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Motion of the Defendant Luis Jimenez-Serrato ("Jimenez-Serrato") to Suppress Evidence Obtained as a Result of Search and Seizure. A Hearing on the Motion was conducted on June 21, 2005, at which time, Jimenez-Serrato appeared personally, and by Manny K. Atwal, Federal Public Defender, and the Government appeared by Jeffrey S. Paulsen, Assistant United States

Attorney.   For reasons which follow, we recommend that the Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure be denied.

## II.  Factual Background

The Defendant is charged with two Counts of Distribution of Methamphetamine, in violation of Title 18 U.S.C. §2, and Title 21 U.S.C. §§841(a)(1), and 841(b)(1)(A), which are said to have occurred on or about March 14, 2005, and April 4, 2005, in this State and District, as well as one Count of Possession with Intent to Distribute Methamphetamine, in violation of Title 21 U.S.C. §§841(a)(1), and 841(b)(1)(A), which is said to have occurred on or about May 17, 2005, in this State and District. As pertinent to those charges, and to the Motion pending before us, the operative facts may be briefly summarized.[1]

---

[1] Rule 12(e), Federal Rules of Criminal Procedure, provides that "[w]here factual issues are involved in determining a motion, the court shall state its essential findings on the record."  As augmented by our recitation of factual findings in our "Discussion," the essential factual findings, that are required by the Recommendations we make, are contained in this segment of our Opinion.  Of course, these factual findings are preliminary in nature, are confined solely to the Motions before the Court, and are subject to such future modification as the subsequent development of the facts and law may require.  See, United States v. Moore, 936 F.2d 287, 288-89 (6th Cir. 1991); United States v. Prieto-Villa, 910 F.2d 601, 610 (9th Cir. 1990).

On April 4, 2005, Enrique Vazquez ("Vazquez") applied for a Search Warrant for the person of Jimenez-Serrato, as well as for the following places: 1) a residence located at 401 Northwest 30th Street, Lot #F-7, in Willmar, Minnesota; 2) a green Honda four-door vehicle, that was further described by its license plate, and vehicle identification number; and 3) a black Honda four-door vehicle, that was further described by its license plate, and vehicle identification number. The Search Warrant was signed, on that date, by a State Court Judge in Kandiyohi County, Minnesota. See, <u>Government Exhibit 1</u>. Vazquez has been a law enforcement officer for twelve (12) years, during which time he worked as a licensed deputy, with the Kandiyohi County Sheriff's Department, and as a narcotics agent with the Drug Task Force, for seven (7) years. Most recently, and at the time he applied for the Search Warrant, Vazquez was working with the Minnesota Bureau of Criminal Apprehension ("BCA"), with his primary duties involving narcotics investigations.

In support of the Search Warrant, Vazquez averred that, in March of 2005, BCA Special Agent Jake May ("May"), who was acting in an undercover capacity, had been in contact with Jimenez-Serrato, via cellular telephone, in order to arrange the delivery of a quantity of methamphetamine. On March 14, 2005, May arranged to meet with Jimenez-Serrato, in St. Cloud, Minnesota, for the purpose of receiving

delivery of approximately four (4) ounces of methamphetamine.  May was equipped with a transmitting device, and his conversations were recorded and monitored.  That afternoon, Vazquez, who was conducting surveillance, observed Jimenez-Serrato, who was in the green Honda described in the Search Warrant, meet with May.  During that meeting, Jimenez-Serrato told May to meet with him at a different location, which was approximately three (3) to four (4) blocks away from where they were, because Jimenez-Serrato had a friend with whom they needed to meet.

Vazquez followed May and Jimenez-Serrato to the second meeting place, where a second Hispanic male identified himself as "Ricardo," and proceeded to engage in a conversation with May and Jimenez-Serrato.  At Jimenez-Serrato's direction, "Ricardo" sold four (4) ounces of methamphetamine, which later field tested positive for that substance, to May, for $5,000.00 of previously recorded BCA funds.  After May left, Jimenez-Serrato, "Ricardo," and a third unidentified Hispanic male, entered Jimenez-Serrato's green Honda, and traveled to a restaurant in St. Cloud and, shortly thereafter, those individuals were followed to the residence at 401 Northwest 30th Street, Lot #F-7, in Willmar, Minnesota, where they entered a mobile home.

May made arrangements to meet Jimenez-Serrato, on April 4, 2005, for a second drug transaction.  While conducting surveillance at 401 Northwest 30th Street,

Lot #F-7, Vazquez observed Jimenez-Serrato arrive at that residence, in his green Honda. Vazquez further observed Jimenez-Serrato remove what appeared to be a box from the trunk of a black Honda that is described in the Search Warrant, place the box in the trunk of the green Honda, remove something from the box, which was wrapped up and left in the trunk of the green Honda, and replace the box to the trunk of the black Honda. Jimenez-Serrato then entered the driver's seat of the green Honda, of which he was the only occupant, and left the trailer park. Vazquez related that he, and other Agents, followed Jimenez-Serrato to Richmond, Minnesota, where other Agents assumed surveillance, and followed him to the prearranged location for the meeting, in St. Cloud. May, who was equipped with a transmitting device, engaged in a second drug transaction with Jimenez-Serrato, during which May purchased an additional four (4) ounces of methamphetamine, with $4,550.00 of previously recorded BCA funds. The Search Warrant was executed on April 5, 2005.

### III. Discussion

A. Standard of Review.

The Fourth Amendment requires that "a search warrant must be issued by a neutral and detached magistrate," Technical Ordnance Inc. v. United States, 244 F.3d 641, 647 (8th Cir. 2001), citing Johnson v. United States, 333 U.S. 10, 13-14

(1948), who will "assess the underlying factual circumstances so as to ascertain whether probable cause exists to conduct a search or to seize incriminating evidence, the instrumentalities or fruits of a crime, or contraband." United States v. Winningham, 953 F. Supp. 1068, 1077 (D. Minn. 1996), citing Warden v. Hayden, 387 U.S. 294 (1967); United States v. Johnson, 64 F.3d 1120, 1126 (8th Cir. 1995). A finding of probable cause must be based upon a consideration of all of the circumstances set forth in the supporting Affidavit, and is proper when a "fair probability [exists] that * * * evidence of a crime will be found in a particular place," or when "'a substantial basis [exists] for * * * conclud[ing]' that a search would uncover evidence of wrongdoing." United States v. Horn, 187 F.3d 781, 785 (8th Cir. 1999), quoting Illinois v. Gates, 462 U.S. 213, 236, 238 (1983), quoting, in turn, Jones v. United States, 362 U.S. 257, 271 (1960); see also, United States v. Gladney, 48 F.3d 309, 313 (8th Cir. 1995); United States v. Tagbering, 985 F.2d 946, 949 (8th Cir. 1993).

Probable cause is "a fluid concept -- turning on the assessment of probabilities in particular factual contexts" and, as such, is "not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, supra at 232; see also, Cooper Industries, Inc. v. Leatherman Tool Group, Inc., 532 U.S. 424, 435 (2001); Ornelas

v. United States, 517 U.S. 690, 697 (1996). In considering the issuance of a Search Warrant, probable cause must be viewed under a reasonableness standard, "the touchstone of the Fourth Amendment," which "is measured in objective terms by examining the totality of the circumstances." Ohio v. Robinette, 519 U.S. 33, 39 (1996), quoting Florida v. Jimeno, 500 U.S. 248, 250 (1991).

Search Warrant "[a]pplications and affidavits should be read with common sense and not in a grudging, hyper technical fashion." Walden v. Carmack, 156 F.3d 861, 870 (8th Cir. 1998); United States v. Williams, 10 F.3d 590, 593 (8th Cir. 1993). "In conducting such an examination, the Court should review the affidavits as a whole, and not on a paragraph-by-paragraph basis." United States v. Winningham, supra at 1077, citing United States v. Anderson, 933 F.2d 612, 614 (8th Cir. 1991); United States v. Townsley, 843 F.2d 1070, 1076-77 (8th Cir. 1988). Under the Fourth Amendment's preference for searches conducted pursuant to Warrants, see, Illinois v. Gates, supra at 236, Courts reviewing Search Warrants are to "accord great deference to the decision of the Judicial Officer who issued the Warrant," and must not engage in a de novo review. United States v. Maxim, 55 F.3d 394, 397 (8th Cir. 1995); see also, Walden v. Carmack, supra at 870.

B.  <u>Legal Analysis</u>.  Jimenez-Serrato requests that we review the four corners of the Search Warrant for probable cause.  Our review of the Search Warrant, and the underlying application, confirms the appraisal of the issuing Judicial Officer, that ample probable cause supported the issuance of the Warrant and, further, that the Warrant was not otherwise fatally defective.

In support of the Warrant, Vazquez averred to two controlled buys, in which Jimenez-Serrato sold four (4) ounces of methamphetamine, on each occasion, to May, who was working undercover.  Furthermore, surveillance of Jimenez-Serrato revealed that, following the initial drug transaction, and prior to the second, Jimenez-Serrato traveled to the residence at 401 Northwest 30th Street, Lot #F-7, in Willmar, Minnesota, and, on each occasion, Jimenez-Serrato traveled to the predetermined locations in his green Honda, which was listed in the Search Warrant.  Finally, prior to the second controlled buy, Jimenez-Serrato was observed removing a box from the trunk of the black Honda that was described in the Search Warrant, and transferring something from that box into the trunk of his own green Honda, before returning the box to the trunk of the black Honda.

On this showing, we find that there was adequate probable cause to search the residence at 401 Northwest 30th Street, Lot #F-7, in Willmar, Minnesota, the green

Honda, the black Honda, and Jimenez-Serrato's person.  Specifically, the information provided, which was based on the investigation and surveillance of Jimenez-Serrato during the two controlled buys, establishes "a probability or substantial chance of criminal activity" occurring at those locations, and by Jimenez-Serrato.[2]  See, United States v. Neumann, 183 F.3d 753, 756 (8th Cir. 1999) ("Probable cause requires 'only a probability or substantial chance of criminal activity, not an actual showing of such activity.'"), quoting Illinois v. Gates, supra at 243-44 n. 13.  Accordingly, we find no basis to sustain a substantive challenge to the Warrant at issue, and we recommend that Jimenez-Serrato's Motion to Suppress Evidence Obtained as a Result of Search and Seizure be denied.

NOW, THEREFORE, It is --

RECOMMENDED:

That the Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Docket No. 16] be denied.

---

[2]Furthermore, we would be compelled, by the law of this Circuit, to find that the officers' reliance upon the Search Warrant was reasonable, because it "was not so facially lacking in probable cause as to preclude the executing officers' good faith reliance thereon."  United States v. McNeil, 184 F.3d 770, 775 (8th Cir. 1999), citing United States v. Leon, 468 U.S. 897, 922-23 (1984).

Dated: July 5, 2005                   s/Raymond L. Erickson
                                                     Raymond L. Erickson
                                                     UNITED STATES MAGISTRATE JUDGE

### NOTICE

Pursuant to Rule 45(a), Federal Rules of Criminal Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1©)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than July 22, 2005**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than July 22, 2005**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.